United States District Court
Southern District of Texas
**ENTERED**
May 22, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 4:19-cv-1813 |
| | ) |
| PHARM D SOLUTIONS, LLC, a corporation, and | ) **CONSENT DECREE OF** |
| LUIS R. DE LEON and | ) **PERMANENT INJUNCTION** |
| JUAN C. DE LEON, individuals, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff, the United States of America, by its undersigned attorneys, having filed a

Complaint for Permanent Injunction against Defendants, Pharm D Solutions, LLC ("Pharm D"),

a corporation, and Luis R. De Leon and Juan C. De Leon, individuals (collectively,

"Defendants"), and Defendants, without admitting or denying the allegations in the Complaint,

having appeared and having consented to the entry of this Consent Decree of Permanent

Injunction ("Decree") without contest and before any testimony has been taken, and the United

States of America having consented to this Decree;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1.     This Court has jurisdiction over the subject matter and all parties to this action

under 28 U.S.C. §§ 1331 and 1345, 21 U.S.C. § 332, and its inherent equitable authority.

2.     The Complaint for Permanent Injunction states a cause of action against

Defendants under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301–399f (the

"Act").

3.     The Complaint alleges that Defendants have violated the Act, 21 U.S.C. § 331(a),

by introducing or causing to be introduced, or delivering or causing to be delivered for

introduction, into interstate commerce, articles of drug that are adulterated within the meaning of 21 U.S.C. § 351(a)(2)(A), in that the drugs have been prepared, packed, or held under insanitary conditions whereby they may have been contaminated with filth or whereby they may have been rendered injurious to health.

4.      The Complaint alleges that Defendants have violated the Act, 21 U.S.C. § 331(a), by introducing or causing to be introduced, or delivering or causing to be delivered for introduction, into interstate commerce, articles of drug that are adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B), in that the methods used in, or the facilities or controls used for, their manufacture, processing, packing, or holding do not conform to, or are not operated or administered in conformity with, current good manufacturing practice to assure that such drugs meet the requirements of the Act as to safety and have the identity and strength, and meet the quality and purity characteristics, which they purport or are represented to possess.

5.      The Complaint alleges that Defendants have violated the Act, 21 U.S.C. § 331(a), by introducing or causing to be introduced, or delivering or causing to be delivered for introduction, into interstate commerce, articles of drug that are adulterated within the meaning of 21 U.S.C. § 351(c), in that their strength differs from, or their purity or quality fall below, that which they purport or are represented to possess.

6.      The Complaint alleges that Defendants have violated the Act, 21 U.S.C. § 331(a), by introducing or causing to be introduced, or delivering or causing to be delivered for introduction, into interstate commerce, articles of drugs that are misbranded within the meaning of 21 U.S.C. § 352(f)(1), in that their labeling does not bear adequate directions for use.

7.      The Complaint alleges that Defendants have violated the Act, 21 U.S.C. § 331(k), by causing articles of drug to become adulterated within the meaning of 21 U.S.C.

§§ 351(a)(2)(A) and 351(a)(2)(B) while the drugs are held for sale after shipment of one or more of their components in interstate commerce.

8. The Complaint alleges that Defendants have violated the Act, 21 U.S.C. § 331(d), by introducing or causing to be introduced, or delivering or causing to be delivered for introduction, into interstate commerce, a new drug, as defined by 21 U.S.C. § 321(p), that is neither approved pursuant to 21 U.S.C. § 355, nor exempt from approval.

9. For the purposes of this Decree, the following definitions shall apply:

A. "CGMP" shall refer to the current good manufacturing practice requirements for drugs within the meaning of 21 U.S.C. § 351(a)(2)(B) and 21 C.F.R. Parts 210 and 211. In determining whether Defendants are manufacturing drugs at an outsourcing facility in compliance with CGMP, Defendants, their expert consultants, and FDA may consider any regulations and/or guidance that FDA has issued with respect to CGMP for outsourcing facilities;

B. "Compound" and "compounding" shall include the combining, admixing, mixing, diluting, pooling, reconstituting, or otherwise altering of a drug or bulk drug substance to create a drug;

C. "Days" shall refer to calendar days unless otherwise stated;

D. "Defendants' facility" shall refer to the facility located at 1304 South Loop West, Houston, Texas 77054, and any other location(s) (including any new locations) at or from which, at any time in the future, any Defendant manufactures, holds, and/or distributes drugs, on their own behalf or on the behalf of any business association(s) in which any Defendant has a legal interest or has any supervisory or management responsibilities over the manufacture of drugs;

3

E.      "Distribution" and "distributing" shall mean to sell, trade, ship, or deliver and shall include, but not be limited to, delivery or shipment to a healthcare setting for administration and dispensing to a patient or to an agent of a patient;

F.      "Drug" shall have the meaning given to the term in 21 U.S.C. § 321(g)(1);

G.      "Drug product" shall mean a finished dosage form (for example, tablet, capsule, or solution) that contains a drug substance, generally, but not necessarily, in association with one or more other ingredients;

H.      "FDA" shall mean the United States Food and Drug Administration;

I.      The terms "manufacture," "manufactured," and "manufacturing" shall include manufacturing, compounding, processing, packing, repackaging, and labeling drugs;

J.      "New drug" shall have the meaning as set out in 21 U.S.C. § 321(p);

K.      "Sterile drug" shall have the meaning as set out in 21 U.S.C. § 353b(d)(5);

L.      "USP <797>" shall refer to the standards set forth in United States Pharmacopeia General Chapter <797> Pharmaceutical Compounding – Sterile Preparations; and

M.      "USP <795>" shall refer to the standards set forth in United States Pharmacopeia General Chapter <795> Pharmaceutical Compounding – Nonsterile Preparations.

10.      Upon entry of this Decree, Defendants and each and all of their directors, officers, agents, employees, representatives, successors, assigns, attorneys, and any and all persons in active concert or participation with any of them who have received actual notice of this Decree by personal service or otherwise, are permanently restrained and enjoined, under 21 U.S.C. § 332(a) and the inherent equitable authority of this Court, from directly or indirectly manufacturing, holding, and/or distributing any sterile drugs manufactured at and/or from Defendants' facility, unless and until:

A.      Defendants ensure that the facilities, methods, and controls used to manufacture, hold, and/or distribute drugs are established, operated, and administered in conformity with this Decree, the Act, and its implementing regulations, and are adequate to prevent Defendants' drugs from becoming adulterated within the meaning of 21 U.S.C. §§ 351(a)(2)(A) and 351(c);

B.      Defendants retain, at Defendants' expense, an independent person or persons (the "Drug Compliance Expert") who:  (1) is without any personal or financial ties (other than a retention agreement to satisfy the requirements of this provision) to Defendants or their families; and (2) by reason of background, training, education, or experience, is qualified to conduct inspections to determine whether Defendants' facility, methods, and controls are adequate to prevent Defendants from manufacturing, holding, and/or distributing drug products that are adulterated within the meaning of 21 U.S.C. §§ 351(a)(2)(A) and 351(c), and to recommend corrective actions.  Defendants shall notify FDA in writing of the identity and qualifications of the Drug Compliance Expert within ten (10) days after retaining any such Drug Compliance Expert;

C.      The Drug Compliance Expert performs comprehensive inspection(s) of Defendants' facility, equipment, processes, and procedures used to manufacture, hold, and/or distribute drugs to determine whether Defendants' facility, equipment, processes, and procedures are adequate to prevent Defendants' drug products from becoming adulterated within the meaning of 21 U.S.C. §§ 351(a)(2)(A) or 351(c), including, but not limited to, whether:

(1)      Defendants use appropriate aseptic technique while producing drug products intended to be sterile, including, but not limited to, not blocking the unidirectional high efficiency particulate ("HEPA") air flow while producing drug products

5

intended to be sterile, properly disinfecting items placed in the ISO 5 hood, not exposing bare skin in the ISO 5 hood, properly gowning prior to entering sterile compounding areas, and maintaining ISO 5 air supply while transporting items from the ISO 5 hood to the lyophilizer;

(2)　　Defendants ensure that the air and component flow in the sterile compounding areas is designed to prevent contamination, for example, by taking appropriate measures to prevent contamination when people and equipment move from areas of lesser quality air to sterile compounding areas;

(3)　　Defendants' ISO 5 hood environment is suitable for sterile drug production, for example, through adequate smoke studies;

(4)　　Defendants properly clean and disinfect rooms and equipment used to produce aseptic drug products, including using sterile disinfectants, and establishing appropriate contact times for sterile disinfectants;

(5)　　Defendants implement adequate environmental monitoring systems, including using appropriate environmental monitoring media plates, and conducting environmental monitoring excursion investigations to identify a probable root cause for microbial contamination and to assess product impact;

(6)　　Defendants engage in appropriate gowning practices to protect drug products from contamination and to preserve the sterility of the gowning materials; and

(7)　　Defendants ensure that their finished drug products have the strength, purity, and quality that they purport or are represented to possess;

D.　　The Drug Compliance Expert certifies in writing to FDA and Defendants that:  (1) the Drug Compliance Expert has inspected Defendants' facility, methods, and controls used to manufacture, hold, and/or distribute drugs as described in 10.C.; and (2) Defendants have

undertaken corrective actions to ensure that their facility, equipment, processes, and procedures are adequate to prevent drugs from becoming adulterated within the meaning of 21 U.S.C. §§ 351(a)(2)(A) and 351(c).  As part of this certification, Defendants shall ensure that the Drug Compliance Expert includes a detailed and complete written report of the results, including any supporting documentation, of the inspection(s) conducted under paragraph 10.C.;

      E.     Defendants establish and maintain a system to report to FDA through the MedWatch reporting system all adverse drug experiences (in the manner described in 21 C.F.R. §§ 310.305 and/or 314.80) associated or potentially associated with any and all of Defendants' drugs as soon as possible, but no later than fifteen (15) days after Defendants' initial receipt of the information;

      F.     Defendants establish and maintain a system to submit to FDA, at the address specified in paragraph 30, Field Alert Reports (in the manner described in 21 C.F.R. § 314.81(b)(1)) for all of Defendants' distributed drugs within three (3) working days from Defendants' initial receipt of the information triggering the Field Alert Report;

      G.     Defendants report to FDA in writing the actions they have taken to:

      (1)     Correct all insanitary conditions and 21 U.S.C. § 351(c) deviations brought to Defendants' attention by FDA, the Drug Compliance Expert, or any other source;

      (2)     Ensure that Defendants' drugs have the strength, purity, and quality that they purport to possess; and

      (3)     Ensure that Defendants' facility, methods, and controls used to manufacture, hold, and/or distribute Defendants' drugs are established, operated, and administered in conformity with the Act and its implementing regulations;

7

H.      FDA representatives, without prior notice and when FDA deems necessary, inspect Defendants' facility to determine whether Defendants' facility, methods, and controls used to manufacture, hold, and/or distribute drugs comply with this Decree, the Act, and its implementing regulations, including whether Defendants' facility, methods, and controls are adequate to prevent their drugs from becoming adulterated within the meaning of 21 U.S.C. §§ 351(a)(2)(A) and 351(c).  FDA will begin an inspection under this subparagraph as soon as practicable.  If FDA determines that Defendants' facility, methods, and controls are not adequate to prevent their drugs from becoming adulterated within the meaning of 21 U.S.C. §§ 351(a)(2)(A) and 351(c), FDA will notify Defendants of the deficiencies it observed; and

I.      FDA notifies Defendants in writing that Defendants appear to be in compliance with all of the requirements set forth in paragraphs 10.A.–10.G. of this Decree.  FDA will notify Defendants as soon as practicable.  In no circumstance, shall FDA's silence be construed as a substitute for written notification.

## REQUIREMENTS APPLICABLE IF DEFENDANTS INTEND TO COMPOUND DRUGS AT DEFENDANTS' FACILITY UNDER 21 U.S.C. § 353A

11.     Upon entry of this Decree, Defendants and each and all of their directors, officers, agents, employees, representatives, successors, assigns, attorneys, and any and all persons in active concert or participation with any of them, who have received actual notice of this Decree by personal service or otherwise, are permanently restrained and enjoined, under 21 U.S.C. § 332(a) and the inherent equitable authority of this Court, from directly or indirectly manufacturing any drug unless such drug is compounded in compliance with 21 U.S.C. § 353a and applicable regulations, including, but not limited to, the following:

A.      The drug product shall:

(1)      Be compounded for an identified individual patient either:
(a) based on the receipt of a valid prescription order or a notation, approved by the prescribing

practitioner, on the prescription order that a compounded product is necessary for the identified

patient; or (b) before the receipt of a valid prescription order for an individual patient, provided

that the compounding is performed only in limited quantities and based on a history of receiving

valid prescription orders for the compounding of the drug product, which orders have been

generated solely within an established relationship between Defendant and either (*i*) the

individual patient for whom the prescription order will be provided, or (*ii*) the physician or other

licensed practitioner who will write such prescription order; and

(2)      Not be distributed by Defendants prior to receipt of a valid

prescription order for the identified patient;

B.      Defendants shall compound the drug product using only approved drug

products or bulk drug substances that meet the conditions in 21 U.S.C. §§ 353a(b)(1)(A)(i), (ii),

and (iii), and/or other ingredients that meet the conditions in 21 U.S.C. § 353a(b)(1)(B);

C.      Defendants shall not compound regularly or in inordinate amounts any

drug product that is essentially a copy of a commercially available drug product, as defined in

21 U.S.C. § 353a(b)(2);

D.      Defendants shall not compound a drug product that appears on any

existing or future list published by FDA in the Federal Register of drug products that have been

withdrawn or removed from the market because such drug products or components of such drug

products have been found to be unsafe or not effective;

E.      Defendants shall not compound any drug product that is identified by

FDA by current existing or future regulation as a drug product that presents demonstrable

9

difficulties for compounding that reasonably demonstrate an adverse effect on the safety or effectiveness of the drug product;

       F.      Defendants shall compound drug products in conformance with 21 U.S.C. § 353a(b)(3)(B), after FDA finalizes a memorandum of understanding and makes it available to the states for their consideration and signature and after the time period FDA allows for states to consider whether to sign the memorandum of understanding; and

       G.      Defendants shall compound drug products in compliance with the United States Pharmacopoeia (USP) chapters on pharmacy compounding, including but not limited to USP <797>, USP <795>, and any other current or future chapters of the USP that are applicable to compounding drugs.  Nothing in this paragraph modifies or relieves Defendants from any obligation to comply with any state statute or regulation.

## REQUIREMENTS APPLICABLE IF DEFENDANTS INTEND TO COMPOUND DRUGS AT DEFENDANTS' FACILITY UNDER 21 U.S.C. § 353B

    12.      Notwithstanding paragraph 11, at any time following receipt of the notification pursuant to paragraph 10.I, Defendants may elect to register Defendants' facility as an outsourcing facility under 21 U.S.C. § 353b, and compound drugs for human use that are made in compliance with all of the requirements in 21 U.S.C. § 353b.  Prior to compounding any drug for human use in an outsourcing facility, Defendants shall:

       A.      Notify FDA in writing of their intent to register and operate Defendants' facility as an outsourcing facility;

       B.      Ensure that each and every drug that Defendants intend to manufacture, hold, and/or distribute at or from their facility satisfies all of the provisions of 21 U.S.C. § 353b, including but not limited to:

          (1)      Drug labeling at 21 U.S.C. § 353b(a)(10);

10

(2)     Facility registration at 21 U.S.C. § 353b(b)(1);

(3)     Use of bulk drug substances at 21 U.S.C. § 353b(a)(2);

(4)     Drug reporting at 21 U.S.C. § 353b(b)(2); and

(5)     Adverse event reporting at 21 U.S.C. § 353b(b)(5);

C.      Ensure that the facilities, methods, and controls used to manufacture, process, pack, and/or hold Defendants' drug products are established, operated, and administered in conformity with CGMP;

D.      Defendants retain, at Defendants' expense, an independent person or persons (the "CGMP Expert") who:  (1) is without any personal or financial ties (other than a retention agreement to satisfy the requirements of this provision) to Defendants or their families; and (2) by reason of background, training, education, or experience, is qualified to conduct inspections to determine whether Defendants' facility, methods, and controls are established, operated, and administered in conformity with CGMP, and to recommend corrective actions. Defendants shall notify FDA in writing of the identity and qualifications of the CGMP Expert within ten (10) days after retaining any such CGMP Expert;

E.      Defendants submit a protocol that identifies the work plan for the CGMP Expert and the methodology that shall be used by the CGMP Expert (the "Work Plan") to: (1) conduct inspection(s) of Defendants' facility as described in paragraph 12.F.; (2) ensure that Defendants implement all recommended corrective actions; and (3) ensure that Defendants' manufacturing, processing, packing, and/or holding of drugs will be continuously administered in conformity with CGMP.  FDA will review the Work Plan as soon as practicable.  Defendants shall not implement the Work Plan prior to receiving FDA's written approval, and in no circumstances, shall FDA's silence be construed as a substitute for written approval;

11

F.     The CGMP Expert reviews all observations listed on Forms FDA-483 issued to Defendants since June 2015 and performs comprehensive inspection(s) of Defendants' facility and the methods and controls used to manufacture, process, pack, and/or hold drugs to determine whether Defendants' facility, methods, and controls are in conformity with CGMP. The CGMP Expert shall evaluate, at a minimum, whether:

(1)     Defendants have established and implemented adequate written procedures, including validation of all aseptic and sterilization processes, designed to prevent microbiological contamination of drug products purporting to be sterile;

(2)     Defendants have established adequate control systems necessary to prevent contamination during aseptic processing, including a system for monitoring environmental conditions and for cleaning and disinfecting the room and equipment to produce aseptic conditions;

(3)     Defendants ensure that they establish and follow written procedures for production and process control designed to assure that the drug products have the identity, strength, quality, and purity that they purport or are represented to possess;

(4)     Defendants ensure that all drug product production and control records are reviewed and approved by the quality control unit to determine compliance with all established, approved written procedures before a batch is released or distributed, and to thoroughly investigate any unexplained discrepancy or the failure of a batch or any of its components to meet any of its specifications;

(5)     Defendants employ an adequate quality control unit that has the responsibility and authority to approve or reject all components, drug product containers, closures, in-process materials, packaging material, labeling, and drug products, and the

authority to review production records to assure that no errors have occurred or, if errors have occurred, that they have been fully investigated;

(6)      Defendants ensure that for each batch of drug product, there is appropriate laboratory determination of satisfactory conformance to final specifications for the drug product, including the identity and strength of each active ingredient, prior to release;

(7)      Defendants ensure appropriate laboratory testing for each batch of drug product purporting to be sterile and/or pyrogen-free that the drug product conforms to such requirements;

(8)      Defendants establish and implement a written testing program to assess the stability characteristics of drug products;

(9)      Defendants ensure that each person engaged in manufacturing drug products wears clean clothing appropriate for their duties, including adherence to appropriate gowning practices for manufacturing sterile drugs;

(10)      Defendants ensure that equipment for adequate control over air pressure, micro-organisms, dust, humidity, and temperature are provided, when appropriate, for the manufacture, processing, packing, or holding of a drug product;

(11)      Defendants ensure that each person engaged in the manufacture, processing, packing, or holding of drug products is trained to enable such persons to perform their assigned functions and that each person responsible for supervising the manufacture, processing, packing, or holding of drug products has the education, training, and experience, or any combination thereof, to perform assigned functions in such a manner as to provide assurance that the drug product has the safety, identity, strength, quality, and purity that it purports or is represented to possess; and

(12)     Defendants ensure that their finished drug products are properly labeled and are not otherwise unapproved new drugs;

G.     The CGMP Expert certifies in writing to FDA and Defendants that:

(1)     The CGMP Expert has inspected Defendants' facility, methods, and controls used to manufacture, hold, and/or distribute drugs;

(2)     All deviations from CGMP brought to Defendants' attention by FDA, the CGMP Expert, and any other source have been corrected; and

(3)     Defendants' facility, methods, and controls comply with CGMP. As part of this certification, the CGMP Expert shall include a detailed and complete report of the results of the CGMP Expert's inspection(s) conducted under this paragraph;

H.     Defendants report to FDA in writing the actions they have taken to:

(1)     Correct all deviations from CGMP brought to Defendants' attention by FDA, the CGMP Expert, or any other source; and

(2)     Ensure that Defendants' facility, methods, and controls used to manufacture, hold, and/or distribute Defendants' drugs are established, operated, and administered in conformity with CGMP;

I.     FDA representatives, without prior notice and when FDA deems necessary, inspect Defendants' facility to determine whether Defendants' facility, methods, and controls used to manufacture, hold, and/or distribute drugs are established, operated, and administered in conformity with CGMP.  FDA will begin an inspection under this subparagraph as soon as practicable; and

J.     Defendants receive written notice from FDA that they appear to be in compliance with all of the requirements set forth in paragraphs 12.A-12.H of this Decree.  FDA

will notify Defendants as soon as practicable.  In no circumstances shall FDA's silence be construed as a substitute for written notification.

## ADDITIONAL REQUIREMENTS

13.     Within two (2) days from the entry of this Decree, Defendants shall initiate a recall, under FDA's supervision, of all finished and/or in-process drugs intended to be sterile that were distributed between October 24, 2018 and the entry of this Decree.  Within thirty (30) days from entry of this Decree, Defendants shall destroy, under FDA's supervision, all finished and/or in-process drugs intended to be sterile and components that are in Defendants' possession, custody, or control.  Defendants shall bear the costs of recall and destruction and the costs of FDA's supervision at the rates specified in paragraph 20.  Defendants shall be responsible for ensuring that the destruction is carried out in a manner that complies with all applicable federal and state environmental laws, and any other applicable federal or state laws.

14.     After Defendants have complied with paragraph 10, and received written notification from FDA under paragraph 10.I., Defendant shall retain an independent person who meets the criteria described in paragraph 10.B. and who is qualified to assess Defendants' compliance with paragraph 10 (the "Auditor") to conduct audit inspections of Defendants' facility.  If Defendants elect to operate Defendants' facility as an outsourcing facility under 21 U.S.C. § 353b, for all audit inspections conducted after such election, Defendants shall retain as the Auditor an independent person who meets the criteria described in paragraph 12.D and who is qualified to assess Defendants' compliance with paragraph 12.  Defendants shall notify FDA in writing as to the identity and qualifications of the Auditor as soon as they retain such Auditor. After Defendants receive written notification from FDA under paragraph 10.I., audit inspections under this paragraph shall commence no less frequently than once every four (4) months for a

period of one (1) year, and once every six (6) months thereafter for an additional four (4) year period.

        A.     At the conclusion of each audit inspection described in this paragraph, the Auditor shall prepare a written audit report ("Audit Report") analyzing whether Defendants comply with the requirements of this Decree, the Act, and its implementing regulations. The Audit Report shall identify all deviations from this Decree, the Act, and its implementing regulations ("audit report observations"). Beginning with the second Audit Report, the Auditor shall also assess the adequacy of any corrective actions taken by Defendants to correct all previous audit report observations, and include this information in the Audit Report. The Audit Report shall be delivered contemporaneously to Defendants and FDA by courier service or overnight delivery service no later than fifteen (15) days after the date each audit inspection is completed. In addition, Defendants shall maintain all Audit Reports in a separate file at Defendants' facility to which the report pertains and shall promptly make the Audit Reports available to FDA upon request.

        B.     If an Audit Report contains any audit report observations, Defendants shall, within thirty (30) days after receipt of the Audit Report, correct those deviations, unless FDA notifies Defendants in writing that a shorter time period is necessary. If, after receiving the Audit Report, Defendants believe that correction of the deviations will take longer than thirty (30) days, Defendants shall, within ten (10) days after receipt of the audit report, propose a schedule for completing corrections. FDA shall, as it deems appropriate, review and approve the proposed schedule in writing prior to implementation. In no circumstance shall FDA's silence be construed as a substitute for written approval. Defendants shall complete all corrections according to the approved correction schedule. Within thirty (30) days after Defendants' receipt

16

of an Audit Report, unless FDA notifies Defendants that a shorter time period is necessary, or within the time period provided in a correction schedule approved by FDA, the Auditor shall review the actions taken by Defendants to correct the audit report observations. Within ten (10) business days after beginning that review, Defendants shall ensure that the Auditor reports in writing to FDA whether each of the audit report observations has been fully corrected and, if not, which audit report observations remain uncorrected.

15. Upon receipt of written notification from FDA under paragraph 10.I., Defendants and each and all of their directors, officers, agents, employees, representatives, successors, assigns, attorneys, and any and all persons in active concert or participation with any of them, who have received actual notice of this Decree by personal service or otherwise, are permanently restrained and enjoined under 21 U.S.C. § 332(a) from directly or indirectly doing or causing to be done any act that:

A. Violates 21 U.S.C. § 331(a) by introducing or causing to be introduced, or delivering or causing to be delivered for introduction, into interstate commerce, any drug that is adulterated within the meaning of 21 U.S.C. §§ 351(a)(2)(A), 351(a)(2)(B), or 351(c), or misbranded within the meaning of 21 U.S.C. § 352(f)(1);

B. Violates 21 U.S.C. § 331(k) by causing any drug to become adulterated within the meaning of 21 U.S.C. §§ 351(a)(2)(A) or 351(a)(2)(B), and misbranded within the meaning of 21 U.S.C. § 352(f)(1), while such drug is held for sale after shipment of one or more of its components in interstate commerce;

C. Violates 21 U.S.C. § 331(d) by introducing or causing to be introduced, or delivering or causing to be delivered for introduction into interstate commerce, any new drug that is neither approved under 21 U.S.C. § 355, nor exempt from approval; and/or

17

D.      Any act that results in the failure to implement and continuously maintain the requirements of this Decree.

16.     If, at any time after entry of this Decree, FDA determines, based on the results of an inspection, analyses of samples, a report or data prepared or submitted by Defendants, the Drug Compliance Expert and/or the Auditor, or any other information, that Defendants have failed to comply with the provisions of this Decree, violated the Act and/or its implementing regulations, and/or that additional corrective actions are necessary to achieve compliance with this Decree, the Act and/or its implementing regulations, FDA may, as and when it deems necessary, notify Defendants in writing of the noncompliance and order Defendants to take appropriate corrective action, including, but not limited to, ordering Defendants to immediately take one or more of the following actions:

A.      Cease all manufacturing, processing, packing, labeling, holding, and/or distribution of any and all drug(s);

B.      Recall specified drugs manufactured, held, and/or distributed by Defendants.  Defendants shall initiate the recall(s) within two (2) business days after receiving notice from FDA that a recall is necessary.  Defendants shall, under FDA's supervision, destroy all finished and/or in-process drugs and components that are in Defendants' possession, custody, or control, for which a recall was initiated.  Defendants shall bear the costs of such recall(s), including the costs of destruction and the costs of FDA's supervision at the rates specified in paragraph 20.  Defendants shall be responsible for ensuring that the destruction is carried out in a manner that complies with all applicable federal and state environmental laws, and any other applicable federal or state law;

C.      Submit additional reports or information to FDA;

D.      Repeat, revise, modify, or expand any report(s) or plan(s) prepared pursuant to this Decree;

E.      Issue a safety alert with respect to a drug manufactured, processed, packed, labeled, held, and/or distributed by Defendants; and/or

F.      Take any other corrective action(s) as FDA, in its discretion, deems necessary to protect the public health or bring Defendants into compliance with this Decree, the Act and/or its implementing regulations.

This remedy shall be separate and apart from, and in addition to, any other remedy available to the United States under this Decree or under the law.

17.     The following process and procedures apply when FDA issues an order under paragraph 16, except as provided in subparagraph D below:

A.      Unless a different timeframe is specified by FDA in its order, within ten (10) business days after receiving an order under paragraph 16, Defendants shall notify FDA in writing either that: (i) Defendants are undertaking or have undertaken corrective action, in which event Defendants also shall describe the specific actions taken or to be taken and the proposed schedule for completing the actions; or (ii) Defendants do not agree with FDA's order.  If Defendants notify FDA that they do not agree with FDA's order, Defendants shall explain in detail and in writing the basis for their disagreement; in doing so, Defendants may also propose specific alternative actions and specific timeframes for achieving FDA's objectives.

B.      If any Defendant notifies FDA that he does not agree with FDA's order, FDA will review Defendant's notification and thereafter, in writing, affirm, modify or withdraw its order, as FDA deems appropriate.  If FDA affirms or modifies its order, it will explain the

basis for its decision in writing.  The written notice of affirmation or modification shall constitute final agency action.

        C.      If FDA affirms or modifies its order, Defendants shall, upon receipt of FDA's order, immediately implement the order (as modified, if applicable), and, if they so choose, bring the matter before this Court on an expedited basis.  Defendants shall continue to diligently implement FDA's order while the matter is before the Court and unless and until the Court reverses, stays or modifies FDA's order.  Any review of FDA's decision under this paragraph shall be made in accordance with the terms set forth in paragraph 28 of this Decree.

        D.      The process and procedures set forth in paragraph 17.A-17.C shall not apply to any order issued under paragraph 16 if such order states that, in FDA's judgment, the matter raises significant public health concerns.  In such case, upon receipt of such an order, Defendants shall immediately and fully comply with the terms of that order.  Should Defendants seek to challenge any such order, they may petition this Court for relief.

        18.      Any cessation of operations or other action described in paragraph 16 shall be implemented immediately by Defendants and shall continue until Defendants receive written notification from FDA that Defendants appear to be in compliance with this Decree, the Act, and its implementing regulations, and that Defendants may resume operations.  Upon Defendants' written request to resume operations, FDA will determine whether Defendants appear to be in such compliance, and, if so, issue to Defendants a written notification permitting, as appropriate, resumption of operations.  In no circumstance shall FDA's silence be construed as a substitute for written notification.  The costs of FDA inspections, sampling, testing, travel time, and subsistence expenses to implement the remedies set forth in this paragraph and paragraph 16

shall be borne by Defendants at the rates specified in paragraph 20.  This provision shall be separate and apart from, and in addition to, all other remedies available to FDA.

19.     Representatives of FDA shall be permitted, without prior notice and as and when FDA deems necessary, to make inspections of Defendants' facility, collect samples, and, without prior notice, take any other measures necessary including but not limited to, observing routine production to monitor and ensure continuing compliance with the terms of this Decree.  During such inspections, FDA representatives shall be permitted access to Defendants' facility including, but not limited to, all buildings, equipment, in-process or unfinished and finished materials and products, containers, labeling, and other promotional material therein; to take photographs and make video recordings; to take samples, without charge to FDA, of finished and unfinished materials and products, containers and packaging material therein, labeling, and other promotional material; and to examine and copy all records relating to the receipt, manufacturing, holding, and/or distribution of any and all drugs and their components.  The inspections shall be permitted upon presentation of a copy of this Decree and appropriate credentials.  The inspection authority granted by this Decree is separate from, and in addition to, the authority to conduct inspections under the Act, 21 U.S.C. § 374.

20.     Defendants shall pay all costs of FDA's supervision, inspections, investigations, analyses, examinations, and reviews that FDA deems necessary to evaluate Defendants' compliance with this Decree, including the travel incurred by specialized investigatory and expert personnel, at the standard rates prevailing at the time the costs are incurred.  As of the date that this Decree is signed by the parties, these rates are:  $97.57 per hour and fraction thereof per representative for inspection work; $132.89 per hour or fraction thereof per representative for analytical or review work; $0.58 per mile for travel by automobile; government rate or the

equivalent for travel by air or other means; and the published government per diem rate or the equivalent for the areas in which the inspections are performed per representative and per day for subsistence expenses, where necessary.  In the event that the standard rates applicable to FDA supervision of court-ordered compliance are modified, these rates shall be increased or decreased without further order of the Court.

21.     Within three (3) days after becoming aware of any of the following information about any drugs manufactured, held, and/or distributed at or from Defendants' facility, Defendants shall submit to FDA at the address specified in paragraph 30, a product quality report describing all information pertaining to any:

A.     Product and/or manufacturing defects that could result in serious adverse drug experiences;

B.     Mislabeling or mix-ups, including incident(s) that causes any drug or its labeling to be mistaken for, or applied to, another article; and/or

C.     Contamination, including any bacteriological, fungal, or environmental contamination, or any significant chemical, physical, or other change or deterioration, or lack of stability or incorrect potency, in any drug.

22.     Within seven (7) days after entry of this Decree, Defendants shall post a copy of this Decree on a bulletin board in the employee common areas at Defendants' facility, and publish the Decree on any internal and/or publicly-available website maintained and/or controlled by Defendants.  Defendants shall ensure that the Decree remains posted as described herein for as long as the Decree remains in effect.

23.     Within seven (7) days after entry of this Decree, Defendants shall provide a copy of this Decree, by personal service or certified mail (restricted delivery, return receipt requested),

to each and all of their directors, officers, agents, employees, representatives, successors, assigns, attorneys, and any and all persons in active concert or participation with any of them (collectively referred to as "Associated Persons").  Within thirty (30) days after entry of this Decree, Defendants shall provide to FDA an affidavit of compliance, signed by a person with personal knowledge of the facts, stating the fact and manner of compliance with the provisions of this paragraph and identifying the names, addresses, and positions of all persons who have received a copy of this Decree pursuant to this paragraph, and attaching a copy of the executed certified mail return receipts.  Within seven (7) days after receiving a request from FDA for any information or documentation that FDA deems necessary to evaluate Defendants' compliance with this paragraph, Defendants shall provide such information or documentation to FDA.

24.     Within seven (7) days after entry of this Decree, Defendants shall hold a general meeting or series of smaller meetings for all Associated Persons, at which they shall describe the terms and obligations of this Decree.  Within thirty (30) days after entry of this Decree, Defendants shall provide to FDA an affidavit of compliance, signed by a person with personal knowledge of the facts, stating the fact and manner of compliance with the provisions of this paragraph and a copy of the agenda, list of attendees, and meeting minutes from the meeting(s) held pursuant to this paragraph.

25.     In the event that Defendants becomes associated with any additional Associated Person(s) at any time after entry of this Decree, Defendants immediately shall provide a copy of this Decree, by personal service or certified mail (restricted delivery, return receipt requested), to such Associated Person(s).  Within thirty (30) days after each time Defendant becomes associated with any such additional Associated Person(s), Defendants shall provide to FDA an affidavit stating the fact and manner of their compliance with this paragraph, identifying the

23

names, addresses, and positions of all Associated Persons who received a copy of this Decree pursuant to this paragraph, and attaching a copy cf the executed certified mail return receipts. Within seven (7) days after receiving a request from FDA for any information or documentation that FDA deems necessary to evaluate Defendants' compliance with this paragraph, Defendants shall provide such information or documentation to FDA.

26.     Defendants shall notify FDA at least fifteen (15) days before any change in ownership, character, or name of any of Defendants' businesses, including incorporation, reorganization, relocation, bankruptcy, dissolution, assignment, or sale resulting in the emergence of a successor corporation, the creation or dissolution of subsidiaries, the creation of any additional entities that engage in manufacturing, holding, packing, and/or distributing drugs, or any other change in the corporate structure, or identity of Pharm D, including a change in Pharm D's registration status pursuant to 21 U.S.C. § 353b, or in the sale or assignment of any business assets, such as buildings, equipment, or inventory, that may affect obligations arising out of this Decree.  Defendants shall provide a copy of this Decree to any potential successor or assign at least fifteen (15) days before any sale or assignment.  Defendants shall furnish FDA with an affidavit of compliance with this paragraph no later than ten (10) days prior to any such assignment or change in ownership.

27.     If any Defendant fails to comply with any provision of this Decree, the Act and/or its implementing regulations, including any time frame imposed by this Decree, then Defendants shall pay to the United States of America:  five thousand dollars ($5,000) in liquidated damages for each day such violation continues; an additional sum of five thousand dollars ($5,000) in liquidated damages for each violation; and further additional sum equal to the retail value of drug products that have been manufactured, held, and/or distributed in violation of this Decree, the

Act, and/or its implementing regulations. The remedy in this paragraph shall be in addition to any other remedies available to the United States under this Decree or the law.

28.     Defendants shall abide by the decisions of FDA, and FDA's decisions shall be final. All decisions conferred upon FDA in this Decree shall be vested in FDA's discretion and, to the extent that these decisions are subject to review, shall be reviewed by this Court under the arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A). Review by the Court of any FDA decision rendered pursuant to this Decree shall be based exclusively on the written record before FDA at the time of the decision. No discovery shall be taken by either party.

29.     Should the United States of America bring, and prevail in, a contempt action to enforce the terms of this Decree, Defendants shall, in addition to other remedies, pay all attorneys' fees and costs, travel expenses incurred by attorneys and witnesses, expert witness fees, investigational and analytical expenses, court costs, and any other costs or fees incurred by the United States in bringing such an action.

30.     All notifications, certifications, reports, correspondence, and other communications to FDA required by the terms of this Decree shall be prominently marked "Consent Decree Correspondence," and shall be submitted electronically to the Program Division Director, Office of Pharmaceutical Quality Operations, Division II, at ORAPHARM2_RESPONSES@fda.hhs.gov. If electronic submission is not possible, communications shall be addressed to the Program Division Director, FDA, ORA/OPQO/DPQO2, 4040 N. Central Expressway, Suite 300, Dallas, TX 75204.

31.     No sooner than sixty (60) months after entry of this Decree, Defendants may petition FDA for leave to ask this Court for relief from this Decree. If, at the time of the petition, in FDA's judgment, Defendants have maintained a state of continuous compliance with this

Decree, the Act, and its implementing regulations for at least sixty (60) months, the United States will not oppose the petition, and Defendants may request the Court to grant such relief.

32.     This Court retains jurisdiction of this action and the parties thereto for the purpose of enforcing and modifying this Decree and for the purpose of granting such additional relief as may be necessary or appropriate.


IT IS SO ORDERED, this _____ day of _____, 2019.


_____
UNITED STATES DISTRICT JUDGE

The undersigned hereby consent to the entry of the foregoing Decree.

For Defendants

_____
LUIS R. DE LEON
Individually and on Behalf of PHARR I D
SOLUTIONS, LLC

_____
JUAN E. DE LEON
Individually

_____
STEPHEN T. SMOW
Bondin Sumrall & Ludner, LLC
One Midtown Plaza
1360 Peachtree Street, Suite 800
Atlanta, GA 30509
404-671-5107
SSnow@ballaw.net

Attorney for Defendants

For Plaintiff

RYAN K. PATRICK
United States Attorney

MELISSA GREEN
Assistant United States Attorney

JOSEPH H. HUNT
Assistant Attorney General

GUSTAV W. EYLER
Director
Consumer Protection Branch

By: _____
RAQUEL TOLEDO
Trial Attorney
Attorney-in-Charge
PA Bar #321175
Consumer Protection Branch
Department of Justice, Civil Division
P.O. Box 386
Washington, D.C. 20044

ERIC A. HAWLEY
Attorney-in-Charge
TX Bar # 24074375
SDTX Bar # 1671591
Garcia & Hawley, PLLC
801 Travis Street, Suite 2175
Houston, TX 77002
t. 713-333-1021
f. 713-333-1029
EHawley-team@GHTexasLaw.com

Attorney for Defendants

t. 202-532-4719
f. 202-514-8742
Raquel.Toledo@usdoj.gov

OF COUNSEL:

ROBERT P. CHARROW
Acting General Counsel

STACY CLINE AMIN
Chief Counsel
Food and Drug Administration
Deputy General Counsel
Department of Health and Human Services

ANNAMARIE KEMPIC
Deputy Chief Counsel for Litigation ,

SAMANTHA HONG
Associate Chief Counsel for Enforcement
U.S. Department of Health & Human
Services
Office of the General Counsel
10903 New Hampshire Avenue
Silver Spring, MD 20993-0002
301-348-1909